NO. 09-3051

─────────────────────────────────────

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

─────────────────────────────────────

UNITED STATES OF AMERICA,
Appellee

v.

DANIEL EARL EYSTER,
Appellant

─────────────────────────────────────

APPEAL FROM JUDGMENT OF CONVICTION AND SENTENCE
IN CRIMINAL NO. 08-00618 IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

─────────────────────────────────────

BRIEF FOR APPELLEE UNITED STATES OF AMERICA

─────────────────────────────────────

MICHAEL L. LEVY
United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

FRANK A. LABOR III
Assistant United States Attorney

615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
(215) 861-8675

**TABLE OF CONTENTS**

STATEMENT OF SUBJECT MATTER JURISDICTION. . . . . . . . . 1

STATEMENT OF APPELLATE JURISDICTION.. . . . . . . . . . . 2

STATEMENT OF ISSUES.. . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE.. . . . . . . . . . . . . . . . . . 5

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . 7

STATEMENT OF RELATED CASES. . . . . . . . . . . . . . . . 26

SUMMARY OF ARGUMENT.. . . . . . . . . . . . . . . . . . . 27

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . 30

    I.    THE DISTRICT COURT'S ADOPTION OF THE FINDING IN
          THE PSR THAT THE DEFENDANT WAS A DANGEROUS SEX
          OFFENDER DID NOT CONSTITUTE PLAIN ERROR BECAUSE
          THE FINDING DID NOT AFFECT THE ADVISORY SENTENCING
          GUIDELINE RANGE.. . . . . . . . . . . . . . . . . 30

    II.   THE DISTRICT COURT ADDRESSED EYSTER'S REQUEST FOR
          A VARIANCE, ON THE GROUND THAT THE SENTENCING
          GUIDELINES WERE NOT BASED UPON EMPIRICAL EVIDENCE,
          AND INDEED NO RESPONSE AT ALL WAS REQUIRED.. . . 37

    III. THE SENTENCE WAS SUBSTANTIVELY REASONABLE.. . . 43

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . 51

## TABLE OF AUTHORITIES

### Cases

**Gall v. United States**,
     552 U.S. 38 (2007). . . . . . . . . . . . . passim

**Johnson v. United States**,
     520 U.S. 461 (1997). . . . . . . . . . . . . 34, 35

**Kimbrough v. United States**,
     552 U.S. 85 (2007). . . . . . . . . 37, 39, 40, 44

**Rita v. United States**,
     551 U.S. 338 (2007). . . . . . . . . 40, 43, 44, 45

**United States v. Aguilar-Huerta**,
     576 F.3d 365 (7th Cir. 2009). . . . . . . . . . 38

**United States v. Atkinson**,
     297 U.S. 157 (1936). . . . . . . . . . . . . . 35

**United States v. Ausburn**,
     502 F.3d 313 (3d Cir. 2007). . . . . . . . . 37, 39

**United States v. Castro-Valenzuela**,
     304 Fed. Apex. 986 (3d Cir. 2008). . . . . . . . 39

**United States v. Couch**,
     291 F.3d 252 (3d Cir. 2002). . . . . . . . . . . 30

**United States v. Duarte**,
     569 F.3d 528 (5th Cir. 2009). . . . . . . . . . 39

**United States v. Frady**,
     456 U.S. 152 (1982). . . . . . . . . . . . . . 35

**United States v. Langford**,
     516 F.3d 205 (3d Cir. 2008). . . . . . . . . 35, 36

United States v. Lessner,
     498 F.3d 185 (3d Cir. 2007). . . . . . . . . . 41, 49

United States v. Lopez-Reyes,
     589 F.3d 667 (3d Cir. 2009). . . . . . . . . . . 38

United States v. Olano,
     507 U.S. 725 (1993). . . . . . . . . . . . . 34, 35

United States v. Plate,
     2010 WL 143789 (3d Cir. 2010). . . . . . . . . . 39

United States v. Prophet,
     335 Fed. Apex. 250 (3d Cir. 2009),
     cert. denied, 2009 WL 3848455
     (U.S. Dec. 14, 2009). . . . . . . . . . . . . . 39

United States v. Pruitt,
     502 F.3d 1154 (10th Cir. 2007). . . . . . . . . 44

United States v. Shrake,
     515 F.3d 743 (7th Cir. 2008). . . . . . . . . . 46

United States v. Velazquez,
     329 Fed. Appx. 365 (3d Cir. 2009). . . . . . . . 39

United States v. Young,
     470 U.S. 1 (1985). . . . . . . . . . . . . . . . 35

## Statutes and Rules

18 U.S.C. § 2251(a). . . . . . . . . . . . . . . . 5, 14

18 U.S.C. § 2252(a)(4)(B). . . . . . . . . . . . . . 5

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . passim

18 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . 2

Fed. R. App. P. 32(a)(7)(B). . . . . . . . . . . . . . 52

U.S.S.G. § 2G2.1. . . . . . . . . . . . . . . . . . . 40

U.S.S.G. § 2G2.1(d)(1). . . . . . . . . . . . . . . . 14

U.S.S.G. § 2G2.2. . . . . . . . . . . . . . . . . . . 40

U.S.S.G. § 3D1.2(c). . . . . . . . . . . . . . . . . . 14

U.S.S.G. § 3D1.4. . . . . . . . . . . . . . . . . . . 14

U.S.S.G. § 4B1.5. . . . . . . . . . . . . . . . 3, 15, 32, 33

## STATEMENT OF SUBJECT MATTER JURISDICTION

Because the defendant was charged in an indictment with violations of federal criminal law, the district court had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3231.

## STATEMENT OF APPELLATE JURISDICTION

Based upon the timely filing of a notice of appeal from the order of judgment in a criminal case entered on July 17, 2009, this Court has jurisdiction over this matter under 28 U.S.C. § 1291.  In addition, this Court has jurisdiction pursuant to 18 U.S.C. § 3742 to review the sentence imposed on the defendant.

## STATEMENT OF ISSUES

1.  Did the district court commit plain error in adopting the finding in the PSR that defendant was a dangerous sex offender under U.S.S.G. § 4B1.5, a finding that was incorrect because the defendant's military conviction for child rape did not meet the definition of a "sex offense conviction" under Section 4B1.5, when the error did not change the calculation of the defendant's Sentencing Guidelines range?

2.  Did the district court fail to give adequate consideration to the defendant's argument that the child pornography guidelines are not based upon empirical evidence?

3.  Was the sentence substantively reasonable, when the district court imposed a sentence within the Sentencing Guidelines range after thoroughly considering the sentencing factors of 18 U.S.C. § 3553(a) and making record findings that the sentence was necessary to implement the sentencing goals of § 3553(a), particularly: (i) protecting the community from further sexual abuse of children by the defendant; (ii) imposing a just punishment for the permanent

-3-

harm the defendant inflicted upon the children who were
victims of his sexual molestation; and (iii) deterring
others from engaging in similar conduct?

## STATEMENT OF THE CASE

On September 11, 2008, agents of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), together with officers from the Pennsylvania State Police ("PSP") and local police departments, executed a search warrant at the residence of Daniel Eyster.  Agents found computer media containing thousands of images of child pornography.  In addition, agents seized a computer thumb drive containing 75 digital photographs of four children engaging in sexually explicit activity in the basement of Eyster's residence and motel rooms.  When questioned about this evidence, Eyster admitted he had taken the photographs, and that he had sexually molested the children depicted in the pictures.

On October 8, 2008, the grand jury returned an indictment charging Eyster with sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and 2251(e). On January 14, 2009, the grand jury returned a superseding indictment.  Count One charged Eyster with sexual exploitation of children.  Count Two charged Eyster with possession of child pornography, in violation of 18 U.S.C.

-5-

§ 2252(a)(4)(B).  On March 17, 2009, Eyster pled guilty to both counts of the superseding indictment.

The district court conducted a sentencing hearing on July 8, 2009.  The court heard testimony of Eyster's victims, reviewed other victim impact statements, and reviewed the digital images.  The district court imposed the maximum statutory sentence of 840 months, consisting of 600 months on Count One and a consecutive sentence of 240 months on Count Two.  The district court imposed a $3,000 fine and entered a forfeiture order, forfeiting the computer equipment and Eyster's residence to the government.  A timely notice of appeal followed.

## STATEMENT OF FACTS

### A. Eyster's Offense Conduct.

#### 1. The September 11, 2008 search.

On September 8, 2008, a United States Magistrate Judge signed a search warrant authorizing ICE agents to search Eyster's residence for evidence of child pornography, including evidence stored on computers and peripherals. App. 105.

ICE agents arrived at Eyster's home at 7:00 a.m. on September 11, 2008. Eyster was not present. Eyster's mother, who lived at the address, contacted Eyster and told him agents were at his home. Eyster was on his way to work and agreed to return home. App. 106.

When Eyster arrived, the agents advised him they were executing a search warrant for evidence relating to child pornography, including computer evidence. Eyster stated he wished to speak with the agents privately and went to the basement where his computer was located. Eyster agreed to cooperate and stated: "I'll give you the stuff right now." Eyster retrieved a black case containing four thumb drives from his computer work station. Eyster also

-7-

opened two locked storage boxes.  One box contained a female child's underwear, a vibrator, and lubricants.  The other box contained condoms, CDs, and videotapes.  Eyster asked if he could speak with the agents privately, so that his mother could not hear them.  ICE Special Agent Carlos Martinez and two police officers moved to a second floor bedroom to interview Eyster.  App. 106.

During the search of the basement, agents found the following items: a Hewlett Packard computer with a hard drive, a laptop computer, a Kodak digital camera, and 38 CDs.  App. 106-07.

During the interview (following Miranda warnings), Eyster stated his child pornography collection would be found on his computer under a file named "My Pictures." Eyster stated he developed a preference for young girls when he was 16 or 17 years old.  Eyster stated he had been viewing child pornography from magazines and videos for the past 15 to 20 years.  Eyster stated he began purchasing child pornography over the Internet in the early 1990s. Eyster said he had purchased thousands of pictures and more than 50 videos of child pornography.  Eyster stated he

stored child pornography on his computer and thumb drives.
App. 107-08.

        At this point, ICE Special Agent Kathryn Murray
informed Agent Martinez about the discovery of Eyster's
"homemade" child pornography collection.  A PSP computer
analyst had reviewed the contents of the four thumb drives
Eyster had given to the agents.  The three Lexar thumb
drives contained images of child pornography downloaded from
the Internet.  The Sandisk thumb drive contained two files:
one named "Thanksgiving 2007" and one named "K&S."  The file
named "K&S' contained digital photographs of children
engaging in sexually explicit conduct.  Some of these
photographs had been taken in the basement of Eyster's
residence where the search was being conducted.  Other
photographs appeared to have been taken in motel rooms.  The
"Thanksgiving 2007" file contained photographs of the same
children, including one of a minor female engaging in
sexually explicit conduct.  The Kodak digital camera found
during the search had been used to create the digital images
found in the basement.  App. 108.

-9-

Agent Martinez told Eyster the agents had reviewed the contents of his thumb drives. Eyster then admitted he had taken the photographs of the children contained on the Sandisk thumb drive. Eyster admitted having sexual contact with three females, who he identified as "KP," age 12, "SP," age 7, and "LP," age 16.[1] Eyster admitted that a fourth child, a boy named "RP," age 13, had participated in the sexual activity. Eyster stated all of these children appeared in the photographs. App. 108-09.

Eyster stated the children are brother and sisters and lived with their parents in Kentucky. Eyster met the children in 2000 at a church he attended in Pennsylvania. Eyster helped the children with their homework and took them to restaurants, shopping malls, and similar places. Eyster maintained contact with the family after they moved to Kentucky. Eyster admitted he persuaded the children to engage in sexual activity so he could photograph them. On some occasions, Eyster provided the children with alcoholic beverages before having sexual contact with them. App. 109.

---

[1] Although the children's complete names are not used in this brief, Eyster identified the children by their full names.

-10-

Eyster admitted having sexual contact with the female children for several years.  Eyster stated he had sexual intercourse with LP when she was 15 years old. Eyster began having sexual contact with KP in 2003 or 2004, and estimated he had sexual contact with her 40 to 50 times, both in Kentucky and Pennsylvania.  Some of the encounters took place in the basement of his home.  Other encounters took place at motels in Kentucky.  Eyster stated the last encounter took place in July 2008.  App. 109.

Eyster stated he traveled to Kentucky in June 2008, picked up KP and SP, and drove them back to his home in Pennsylvania.  Eyster had sexual contact with KP and SP during this visit.  Eyster drove the children back to Kentucky after the July 4th holiday.  App. 109.

2.    The contents of the seized computer media.

PSP Corporal Robert Erdely, a computer forensics expert, performed a full analysis of the seized computer equipment.  This analysis disclosed that the Sandisk thumb drive contained 75 digital images.  These images depicted KP, LP, and SP exposing their genital areas, sometimes mimicking pornographic poses.  Some of the digital images

-11-

depicted the minor females fondling each other's genital areas.  Some of the photographs depicted close-ups of the genital area of SP being fondled by an adult hand.  One digital image depicted LP fondling the genital area of RP.  One digital image depicted SP fondling the genital area of an adult man.  Some of the images were taken in the basement of Eyster's residence.  Other images were taken in motel rooms.  One of the images included a portion of Eyster's face.  This image was taken in the same motel room where images of the minor children engaging in sexually explicit conduct were taken.[2]  App. 109-10.

Eyster's hard drive contained video files and hundreds of digital image files.  Most of these images contained depictions of children engaged in sexually explicit conduct.  Nineteen CDs contained images of children engaged in sexually explicit conduct.  One CD contained over 2,000 images of child pornography.  App. 110-11.

---

[2]  Corporal Erdely determined that 52 of the 75 images were created by the Kodak digital camera seized in Eyster's residence.  The camera was manufactured in Japan.

-12-

### 3.    The Kentucky victims.

Detective Kelly Slone, a member of a Kentucky police department, located LP, RP, KP, and SP, and confirmed they are the children depicted in the 75 digital images. Birth records confirmed LP was 16 years old, RP was 14 years old, KP was 13 years old, and SP was 8 years old. Detective Slone obtained statements from the children which corroborated Eyster's admissions.  App. 111.

Business and travel records confirmed that Eyster traveled to Kentucky and stayed at a local motel from November 17 through November 24, 2007.  (Thanksgiving occurred on November 22, 2007.)  Detective Slone confirmed that Eyster stayed in the room depicted in digital images of the minors engaging in sexually explicit activity.  App. 111.

Business and travel records further confirmed that Eyster traveled to Kentucky and stayed at a local motel from April 5 through April 9, 2008.  Detective Slone confirmed that Eyster stayed in the room depicted in other digital images of the minors engaging sexually explicit activity. App. 112.

-13-

Business and travel records also revealed that
Eyster traveled to Kentucy and returned to Pennsylvania in
June and July 2008.  Agent Martinez confirmed that digital
images of the minors engaged in sexually explicit activity
were taken in the basement of Eyster's home.  App. 112.

B.  **The Presentence Report**.

The Probation Office grouped Eyster's convictions
for Counts One and Two pursuant to U.S.S.G. § 3D1.2(c).  PSR
¶ 42.  Pursuant to U.S.S.G. § 2G2.1(d)(1), each of the four
minor victims identified in Count One (sexual exploitation
of children, in violation of 18 U.S.C. § 2251(a) and
2251(e)) was treated as a separate count.  PSR ¶ 43.  The
adjusted offense level for the highest group was level 40.
PSR ¶¶ 51, 83.  The Probation Office increased the offense
level four levels pursuant to U.S.S.G. § 3D1.4, because
there were four victims.  PSR ¶ 75-81.  The Probation Office
reduced Eyster's offense level three levels for acceptance
of responsibility.  PSR ¶¶ 84-85.  Eyster's total offense
level was level 41.  PSR ¶ 86.

The Probation Office found that Eyster had a 1988
military conviction for raping a minor child, for which

-14-

Eyster was sentenced to 96 months' imprisonment.  PSR ¶¶ 88-93.  The Probation Office determined that Eyster's criminal history was Category II.  PSR ¶ 94.

The advisory Sentencing Guidelines range for level 41 in criminal history category II is 360 months to life imprisonment.  However, the Probation Office found that Eyster was a dangerous sex offender under U.S.S.G. § 4B1.5 because of his prior military conviction for raping a minor.  PSR ¶ 83.  Accordingly, the Probation Office increased Eyster's criminal history to Category V.  PSR ¶ 94.  Nevertheless, Eyster's advisory Sentencing Guidelines range remained 360 months to life imprisonment.  PSR ¶ 123.  Based on operation of the statutory maximum provisions, the effective sentencing range was 360 to 840 months' imprisonment.

Eyster asserted no objections to the calculation of his advisory Sentencing Guidelines range.  App. 132.

C.  The Sentencing Hearing.

At the sentencing hearing, the district court reviewed the 75 digital images of the Kentucky children and

-15-

a representative sample of child pornography seized from
Eyster's computer media.  App. 178-85.

        The government learned that Eyster had molested
numerous other children after his release from prison for
his military conviction.  The government presented the
testimony of two of Eyster's victims at sentencing.

        "BM" was 40 years old at the time of sentencing.
App. 148.  She is Eyster's cousin and has known him all her
life.  App. 149-50.  BM's family would visit Eyster's family
in Tamaqua, Pennsylvania.[3]  App. 151.  During these visits,
Eyster would sexually molest BM while they were in the
basement.  App. 151-53.  BM was six years old when Eyster
first molested her.  App. 152.  The molestation continued
until BM was 12 or 13 years, when Eyster entered the Navy.
App. 153.  BM never told anyone about the sexual
molestation.  Years later, BM was on vacation with Eyster's
family.  Another family with a young daughter was with them.

--------

        [3]  Another victim, a 17-year-old female identified in
the presentence report as the "Tamaqua Victim," did not
testify at the sentencing hearing, but told investigators
that Eyster began sexually molesting her shortly after his
release from prison in 1995, when she was four years old.

When BM observed Eyster touching the girl, she "went off"
and called him a child molester.  App. 154.  BM testified:

> So he was already warned.  He was warned.  Why was
> he in jail in the Navy?  Ask him that question.
> He was warned there, he was warned from me, and he
> ain't going to change.  You were warned too many
> times.  It should have stopped.  There's anger
> here, you know.

App. 155.

BM testified that she has flashbacks of Eyster's
abuse of her, which interfere with her relationship with her
husband.  App. 156-57.  BM testified that she sent a letter
to the district court asking for a death sentence for
Eyster:

> I put it in there, that I was angry, and I actually
> asked for the death penalty.  I said, all them people
> he hurt.  And that's what I asked for.  You know – I
> don't want to hurt nobody like that.  If he gets life
> in prison, that would help me.  But I'm afraid if you
> let him out, he's going to do the same thing.  It's a
> very hard habit to break, and, you know, there were so
> many other people hurt and little kids, and I don't
> want to see them go through what I went through.

App. 164.

"TA" testified that she was the mother of the
young girl whom BM identified who went on the camping trip
with Eyster.  App. 167.  TA testified that Eyster was a
close family friend, who was treated as an uncle to her

-17-

children.  App. 167-68.  TA said she had no idea that Eyster

was sexually molesting her daughter.  App. 168.  Eyster once

told TA that child molesters should be castrated and

instructed her children what to do if anyone ever touched

them improperly.  App. 169.  TA testified that Eyster moved

into her house and lived with her family.  App. 169-70.  One

night, TA caught Eyster leaving her daughter's bedroom.

App. 171-72.  Eyster "looked all flustered."  App. 171.

TA's daughter told her that Eyster had massaged her back and

kissed her.  TA locked her daughter's bedroom door.  The

next day, Eyster moved out of the house.  App. 172.  TA's

daughter provided a statement to the Lancaster County Child

Alliance Center, but TA does not know the details of the

statement.[4]  App. 173.  TA's daughter was placed in

counseling after she "started crying and laid on the floor

in a fetal position" when called upon to give a presentation

at school.  App. 174.  TA testified that Eyster "had me

snowed."  TA told the district court:

---

[4]  A copy of the daughter's statement, in which she
detailed Eyster's sexual abuse, was introduced into evidence
at the sentencing hearing.  App. 177-78.

> I am asking that you please, please give the maximum
> you can give to Dan.  I didn't realize how many - and I
> still don't know how many other children are out there
> that are going through the same thing that [BM] went
> through, I am going through, and now, thanks to him, my
> daughter is going through.  I don't know how many other
> victims there are out there.  I do know, as I told you,
> her relationships – forever, for the rest of her life
> are not going to be the same, because of Dan.  She's
> not going to be living a normal life because of him.
> And she now looks at older men and she's covering
> herself up and she's wondering if they're thinking the
> same thing he was doing.  And I – that's a horrible way
> to go through life.  And I also agree, he's not going
> to change.

App. 176-77.

The mother/stepmother of the four Kentucky victims submitted a victim impact statement describing the tragic effects of Eyster's offense conduct on the four children. App. 180.  In addition, with respect to Eyster's collection of computer-generated child pornography, the National Center for Missing and Exploited Children ("NCMEC") analyzed the images to determine whether any of the child victims depicted in the materials have been identified.  According to NCMEC, three of the video movies and 301 of the digital images seized from Eyster depict images of children who have been previously identified by other law enforcement agencies as victims of sexual exploitation.  App. 112-13.  The

government presented the victim impact statements related to a number of these crimes.  App. 180 (the statements included those of parents and of the child victims themselves).

On the basis of all of this evidence, the government asked the district court to impose a sentence within the Sentencing Guidelines range that would assure Eyster could never molest another child, either directly by physical contact or indirectly by accessing child pornography on the internet:

> [F]rom the government's perspective, the factor that drives this sentencing is protection of the community. And the most important goal, here, is to incapacitate this defendant from ever molesting another child. . . .
>
> Now, as the prosecutor, I represent the victims.  I'm not going to speak for the known victims: [BM] and [TA] spoke far more eloquently about what victimization of these crimes means, and the same for the victim impact statements that Your Honor has reviewed.  They're - they describe in explicit, excruciating detail, the harm to individuals and to the community from the crimes that this defendant has committed.
>
> The victims I want to represent today are the unknown victims, and I suspect there's a lot of them.  But more importantly, the next victim.  That's the person I want to represent today, because I don't want there to be a next victim.  And my concern is if this defendant ever sets foot out of prison, there will be another victim. And it will be a another child.  And it will be another child whose life will be destroyed.  And that's what the sentence should reflect today.  Whether it's a child that's lured into somebody's basement or into a

motel room somewhere or a child who is victimized time
and time again, every day, hundreds of time a day, by
people looking at their images on the Internet, images
of them being defiled and abused by adults . . . .

This defendant was warned many times, and he didn't
stop.  And he's not going to stop.  Again, and you just
take a look at the record.  [BM]'s testimony - that
abuse probably began when Eyster was a teenager, before
he went into the military service. . . . This defendant
was dishonorably discharged from the Navy because he
raped a child.  He spent many years in prison; the
ignominy of that court-martial, the dishonorable
discharge and spending a lengthy period of time in
prison didn't stop him.  Within a year of getting out
of the criminal justice system, he was back molesting
children again. . . .

When this defendant is in society, he molests children.
When he's in prison, he won't be able to access
children, and when he's in prison, he won't be able to
access child pornography over the Internet.  So that's
really, from the government's perspective, the
important consideration in this sentencing.

App. 187-88.

Eyster, for his part, presented the testimony of

his mother and spoke on his own behalf.  Eyster stated he

was sorry, accepted responsibility, and requested mercy.

Eyster's counsel requested that the district court

vary from advisory Sentencing Guidelines and impose a

sentence of 25 years, the statutory mandatory minimum for

Count One.  Counsel stated:

-21-

>              The guidelines are actually a little higher.  I think
>         we have stated in our memorandum some thoughts on that,
>         as far as the guidelines are derived and the basis for
>         the guidelines, and we cited some opinions that have
>         recently been issued concerning the, you know, the
>         guidelines range might, when it comes to these
>         offenses, there has been some thought that there's no
>         empirical evidence.  And what I mean by that is the
>         guidelines are calculated; I'm sure that people didn't
>         write down numbers for no reason, but there doesn't
>         seem to be a correlation between the conduct and the
>         way the guidelines are written.

App. 145.

        The district court sentenced Eyster to 840 months,

consisting of the 600 months on Count One and 240 months on

Count Two.  The district court imposed a $3,000 fine and

lifetime supervision.  The district court ordered Eyster to

forfeit the seized computer equipment and his property at 4

Cameron Court.

        The district court stated its findings under 18

U.S.C. § 3553(a).  The district court described the nature

and circumstances of Eyster's offense conduct.  App. 200-02,

208.  The court described Eyster's history and

characteristics, App. 202, 208, finding that Eyster was "an

unrepentant child predator," App. 202, who had shown little

or no remorse for his conduct, App. 202, 206.

-22-

The district court addressed the seriousness of Eyster's offense at length.  App. 203-05.  Reviewing the testimony of the victims and the victim impact statements, the district court found that "the damage, both immediate and long-term inflicted by the defendant upon the victims of this offense is incalculable."  App. 203.  The district court found that Eyster, in purchasing, possessing, and keeping images of child pornography from the Internet, violated the children victims depicted on these images "again and again and again."  App. 204.

With respect to just punishment, the district court found that the need for the sentence to impose just punishment required that Eyster spend the rest of his life in prison:

> So it's only appropriate that because the defendant has permanently ruined or participated in some fashion the permanent ruination of these young children's lives, that he should spend the rest of his life in jail.

App. 204-05.

The district court found that the need to impose a sentence that will protect the community from Eyster was the most compelling sentencing factor:

-23-

He has shown little or no remorse for his actions, and
he represents an absolute threat to any community in
which he might live, and specifically, the young
children of any such community.  The necessity to
protect the community, specifically its minor children,
as well as to punish the defendant for his unspeakable
acts, in my view, outweighs the other sentencing
factors.

App. 206.

The district court found that the sentence would

serve to deter others who might share Eyster's deviant

impulses "from acting out on their impulses to the detriment

of children and the community."  App 206, 209.

The district court found that the Bureau of

Prisons could provide Eyster with any needed medical or

psychological treatment, App. 206, and that Eyster had no

educational or vocational needs, App. 209.

The district court considered the advisory

Sentencing Guidelines and imposed a sentence within the

advisory range.  App. 211.  The district court addressed the

"parsimony" provision of Section 3553(a).  App. 208-09.  The

court addressed the need to avoid unwarranted sentencing

disparities, finding that the imposition of a sentence

within the advisory Sentencing Guidelines range adequately

addressed this sentencing factor.  App. 211-12.  The

-24-

district court noted that restitution was not applicable.
App. 212.

In particular, the district court considered but
rejected Eyster's request to vary from the Sentencing
Guidelines and impose the statutory mandatory minimum of 25
years.  The district court noted that it had read Eyster's
sentencing memorandum, App. 128, and had "considered the
defendant's sentencing grounds."  App. 200.  The district
court denied the request for a lower sentence, stating:

> I believe that a lesser sentence would have depreciated
> the seriousness of this offense and would not have
> sufficiently promoted respect for the law or provided
> sufficiently just punishment for the offense.

App. 208.

## STATEMENT OF RELATED CASES

The government is not aware of any other related case or proceeding that is completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

## SUMMARY OF ARGUMENT

1.   The district court did not commit plain error in adopting the finding that Eyster was a dangerous sexual offender and his criminal history was category V.   Correctly computed, Eyster's Guidelines calculation is offense level 41 in criminal history category II, which results in a range of 360 months to life imprisonment.   Notwithstanding the finding that Eyster's criminal history category was category V, Eyster's Sentencing Guidelines range remained 360 months to life imprisonment.   Further, it is obvious from the record that the court was determined, regardless of the precise guideline calculation, to incapacitate Eyster for life.   The error did not affect any substantial right, and therefore did not cause Eyster any prejudice.

2.   Eyster's claim that the district court failed to address his argument that the child pornography guidelines are not empirically based must be denied, as this Court recently held that a sentencing court is not required to address such an argument.   In any event the court in this case did indeed address, and reject, Eyster's request for a variance.   The district court stated that it had read

-27-

Eyster's sentencing memorandum where he first presented the argument that the Sentencing Guidelines for possession of child pornography are unreliable because they are based upon Congressional mandate and not empirical evidence.  The district court stated it had considered the arguments Eyster presented at the sentencing hearing.  The district court rejected the request for a lesser sentence, finding that a lesser sentence would be inconsistent with the sentencing objectives of Section 3553(a).  Rather than ignoring Eyster's sentencing argument, the record reflects that the district court chose to reject it, as the district court may do in the exercise of its discretion.

     3.  The sentence is substantively reasonable.  The district court imposed a sentence within the Sentencing Guidelines range, after given meaningful consideration to the sentencing factors of Section 3553(a).  The district court's findings that the statutory maximum penalty was necessary to protect the community, impose just punishment, and deter other from committing similar conduct, are unassailable, and establish that the sentence is reasonable.

-28-

Eyster has failed to meet his burden of showing that the sentence was in any way unreasonable.

## ARGUMENT

I.  **THE DISTRICT COURT'S ADOPTION OF THE FINDING IN THE PSR
    THAT THE DEFENDANT WAS A DANGEROUS SEX OFFENDER DID NOT
    CONSTITUTE PLAIN ERROR BECAUSE THE FINDING DID NOT
    AFFECT THE ADVISORY SENTENCING GUIDELINE RANGE.**

### Standard of Review

The district court's finding regarding Eyster's
criminal history is subject to review for plain error
because Eyster did not object to the finding.  See United
States v. Couch, 291 F.3d 252, 252-53 (3d Cir. 2002).

### Discussion

Appellant Daniel Earl Eyster asserts that his
sentence was procedurally and substantively unreasonable.
Eyster contends that the district court committed procedural
error in miscalculating his criminal history and in failing
to address his request for a variance.  Eyster contends the
sentence is substantively unreasonable because it is longer
than necessary to accomplish the sentencing goals of 18
U.S.C. § 3553(a).

Eyster's arguments are without merit.  The
district court imposed a sentence within the advisory
Sentencing Guidelines range, and made extensive findings

-30-

that reflected its meaningful consideration of the

sentencing factors of 18 U.S.C. § 3553(a), as well as

Eyster's request for a variance.  Accordingly, the Court

must affirm the judgment of the district court.

This Court reviews the district court's sentence

for reasonableness, evaluating both its procedural and

substantive underpinnings, under a deferential abuse of

discretion standard. See Gall v. United States, 552 U.S. 38

(2007).  Under Gall, an appellate court must:

> [F]irst ensure that the district court committed no
> significant procedural error, such as failing to
> calculate (or improperly calculating) the Guidelines
> range, treating the Guidelines as mandatory, failing to
> consider the § 3553(a) factors, selecting a sentence
> based on clearly erroneous facts, or failing to
> adequately explain the chosen sentence - including an
> explanation for any deviation from the Guidelines
> range.  Assuming that the district court's sentencing
> decision is procedurally sound, the appellate court
> should then consider the substantive reasonableness of
> the sentence imposed under an abuse-of-discretion
> standard.  When conducting this review, the court will,
> of course, take into account the totality of the
> circumstances. . . . The fact that the appellate court
> might reasonably have concluded that a different
> sentence was appropriate is insufficient to justify
> reversal of the district court.

Gall, 552 U.S. at 51.

Here, the record established that the Eyster was a

relentless predator.  The district court found Eyster was an

-31-

"unrepentant child molester" who was "an absolute threat to
any community in which he might live. . . ."  His crimes
were heinous.  Eyster inflicted permanent, incalculable harm
upon defenseless children.  In light of the nature and
seriousness of Eyster's conduct and the threat he posed to
innocent children, the district court's sentence was
reasonable.  Indeed, a lesser sentence would not only be
unreasonable, it would be unconscionable.

        Turning to Eyster's first claim of sentencing
error, the government agrees that Eyster's military
conviction for child rape does not meet the definition of a
"sex offense conviction" under U.S.S.G. § 4B1.5, and that
the Probation Office therefore erred in finding Eyster was a
dangerous sex offender under Section 4B1.5, placed in
criminal history category V.  However, this finding does not
constitute plain error because it did not change the
calculation of Eyster's Sentencing Guidelines range.

        Eyster concedes his correct Sentencing Guidelines
calculation is level 41 in criminal history category II.
This results in a Sentencing Guidelines range of 360 months
to life imprisonment (with the cap reduced to 840 months in

this case due to the statutory maximum provisions).  Br. 15.
After applying Section 4B1.5, the Probation Office increased
Eyster's criminal history from category II to category V,
but the increase in the criminal history category did not
change Eyster's Sentencing Guidelines range: in criminal
history category V, Eyster's range remains 360 to 840
months.

In short, the error in calculating Eyster's
criminal history did not affect any substantive right and
did not cause any prejudice.  Rather, the error was
harmless.

Eyster contends that the error regarding his
criminal history "distorted" the district court's view of
the Guidelines and the 3553(a) factors.  Br. 18.  Eyster
provides no record support for this contention, and it is
plainly untrue.  The court in fact never mentioned that
Eyster was a dangerous sex offender under U.S.S.G. § 4B1.5.
At the same time, despite the anomaly that a military
conviction for rape is not accorded the same treatment under
the Guidelines as an equivalent federal or state conviction,
the import of the underlying facts -- that Eyster raped a

-33-

child while serving in the military, served an eight-year
sentence for that offense, and then emerged from prison to
immediately continue his life of abusing children -- is
obvious and undeniable.  Based on these facts, and all the
other information about Eyster's brutalization of children,
the court stated its clear intent to incarcerate Eyster for
the rest of his life.  App. 205 (the court stated:  "I put
in the sentence a number of conditions of supervised
release, after his release, but I fully expect that he will
not be released alive.  And he'll spend the rest of his life
in prison, appropriately so, given the seriousness of the
offense and the its effect on the innocent children and the
community.").

        It is the defendant's burden to establish plain
error.  United States v. Olano, 507 U.S. 725, 734-35 (1993).
To do so, he must prove that (1) the court erred; (2) the
error was obvious under the law at the time of review; and
(3) the error affected substantial rights, that is, the
error affected the outcome of the proceedings.  Johnson v.
United States, 520 U.S. 461, 467 (1997).  If all three
elements are established, the Court may, but need not,

-34-

exercise its discretion to award relief.  Id.  That
discretion should be exercised only in cases where the
defendant is "actually innocent" or the error "'seriously
affect[s] the fairness, integrity or public reputation of
judicial proceedings.'"  Olano, 507 U.S. at 736, quoting
United States v. Atkinson, 297 U.S. 157, 160 (1936).  The
"plain-error exception to the contemporaneous-objection rule
is to be 'used sparingly, solely in those circumstances in
which a miscarriage of justice would otherwise result.'"
United States v. Young, 470 U.S. 1, 15 (1985), quoting
United States v. Frady, 456 U.S. 152, 163 n.14 (1982).

        Here, it is apparent that, with the guideline
range unchanged and the court determined to impose an
appropriate sentence amounting to life imprisonment, the
guideline calculation error did not affect the outcome of
the proceedings, and certainly does not warrant exercise of
this Court's discretion to correct the calculation mistake.

        This Court has made clear that "[a] correct
calculation . . . is crucial to the sentencing process and
result."  United States v. Langford, 516 F.3d 205, 211-12
(3d Cir. 2008).  Accordingly, the Court explained, a

guideline calculation error is harmless only where the proponent of the sentence carries the burden of demonstrating that the district court would have imposed the same sentence absent the calculation error.  Id. at 215. However, Langford and all related cases involved situations in which the guideline range was incorrectly calculated; there is no precedent of which we are aware (and Eyster has cited none) holding that any guideline mistake is immune from a harmless error finding where the advisory range itself would be unchanged.  In this case, moreover, the burden to show error falls on the defendant, given the absence of an objection in the district court.  It is clear that, where the defendant on appeal is advocating the same guideline range which the court applied, the defendant under the plain error test cannot sustain his burden of showing that the district court would have imposed a different sentence.  Eyster is not entitled to relief.

II.  THE DISTRICT COURT ADDRESSED EYSTER'S REQUEST FOR A
     VARIANCE, ON THE GROUND THAT THE SENTENCING GUIDELINES
     WERE NOT BASED UPON EMPIRICAL EVIDENCE, AND INDEED NO
     RESPONSE AT ALL WAS REQUIRED.

### Standard of Review

Whether the district court adequately considered a sentencing argument properly raised by Eyster is subject to review for abuse of discretion.  See United States v. Ausburn, 502 F.3d 313, 328 (3d Cir. 2007).

### Discussion

Eyster contends the district court failed to address his argument that the court should vary from the Sentence Guidelines range, and impose the lower statutory mandatory minimum sentence, because the applicable Sentencing Guidelines are based upon Congressional mandate and not empirical evidence developed by the Sentencing Commission.  Br. 15-17.  The record demonstrates that the district court was aware of Eyster's sentencing argument, but declined to adopt it.  Further, the court was not required to respond to Eyster's particular argument.

Following Kimbrough v. United States, 552 U.S. 85 (2007), defense counsel in many contexts have attempted to

-37-

challenge the "empirical" basis of guidelines, asserting

that the Sentencing Commission's formulation of various

guidelines was insufficiently reasoned.  Significantly, in

United States v. Lopez-Reyes, 589 F.3d 667 (3d Cir. 2009), a

decision which Eyster overlooks, this Court held that "a

court is not required to engage in 'independent analysis' of

the empirical justifications and deliberative undertakings

that led to a particular Guideline."  Id. at 671.

        In Lopez-Reyes, the defendant was convicted of

illegal reentry after deportation, and argued that a 16-

level enhancement in the pertinent guideline, § 2L1.2,

applicable to a person who had previously been convicted of

a "crime of violence," was not fully reasoned.  The

defendant further asserted, like Eyster here, that the

district court had committed procedural error in not

addressing this argument.  This Court rejected the appeal,

relying in part on like determinations by other circuits

that a sentencing court is not required to explore the

empirical bases of guidelines.  Id. (citing United States v.

Aguilar-Huerta, 576 F.3d 365 (7th Cir. 2009) ("[A judge]

should not have to delve into the history of a guideline so

-38-

that he can satisfy himself that the process that produced it was adequate to produce a good guideline."); United States v. Duarte, 569 F.3d 528, 530 (5th Cir. 2009) ("Kimbrough does not force district or appellate courts into a piece-by-piece analysis of the empirical grounding behind each part of the sentencing guidelines.").  See also United States v. Prophet, 335 Fed. Apex. 250 (3d Cir. 2009) (not precedential), cert. denied, 2009 WL 3848455 (U.S. Dec. 14, 2009); United States v. Velazquez, 329 Fed. Appx. 365 (3d Cir. 2009) (not precedential); United States v. Castro-Valenzuela, 304 Fed. Apex. 986 (3d Cir. 2008) (not precedential).[5]

---

[5]  In United States v. Plate, 2010 WL 143789 (3d Cir. 2010) (not precedential), the panel further explained:

> Even if the District Court had wholly ignored Plate's *Kimbrough* argument, this would not have been error. The District Court must consider any non-frivolous argument that is properly presented, has "colorable legal merit," and has a "factual basis" in the record. United States v. Ausburn, 502 F.3d 313, 329 (3d Cir.2007).  Here, the record contains no attempt by Plate to substantiate, through a historical analysis or actual record evidence, his claim that the child pornography Guidelines lack empirical support.

Plate, 2010 WL 143789 at *2.

    Beside providing no factual support for his

-39-

In any event, the district court in this case in
fact understood and rejected the defense argument.  First,
the district court stated it had read Eyster's sentencing
memorandum, in which Eyster raised the argument.  App. 128.
Moreover, after counsel referenced the argument at
sentencing, the district court stated that it had
"considered the defendant's sentencing grounds."  App. 200.
These statements clearly reflect that the district court was
cognizant of and considered Eyster's sentencing argument in
fashioning the sentence.  The Supreme Court has recognized
that when "the record makes clear that the sentencing judge
considered the evidence and arguments, we do not believe the
law requires the judge to write more extensively."  Rita,
551 U.S. 338, 359 (2007).  Similarly, this Court has noted

---

contention, Eyster also relies upon inapposite authority.
Eyster cites to cases which have considered, but rejected,
the argument that the guideline applicable to possession of
child pornography, U.S.S.G. § 2G2.2, is unreliable because
it is not based upon empirical evidence.  Br. 16.  Here, the
guideline applicable to Eyster's offense conduct, sexual
exploitation of children, was U.S.S.G. § 2G2.1.  Moreover,
none of the cases cited by Eyster support the proposition
that the district court abused its discretion.  These cases
recognize that under Kimbrough, the district court has
discretion to apply the child pornography guidelines, even
if they are not supported by empirical evidence.

-40-

that a sentencing court need not make record findings about every sentencing factor, if the record as a whole makes clear the court took the factor into account.  See United States v. Lessner, 498 F.3d 185, 203 (3d Cir. 2007).

Second, the district court never stated that it lacked authority or discretion to vary from the advisory Sentencing Guidelines on the grounds raised by Eyster. Thus, nothing in this record suggests the district court believed it lacked discretion to vary from the Sentencing Guidelines range for the reason advanced by Eyster.

Third, the district court addressed, but rejected, Eyster's request to impose a sentence below the advisory Sentencing Guidelines.  App. 208.  The district court declined Eyster's request to vary from the Sentencing Guidelines, not because it believed it lacked authority to do so, but because it believed a lesser sentence would be inconsistent with the sentencing factors set forth at 18 U.S.C. § 3553(a).  As stated earlier, the court's intent to impose the maximum possible sentence was unambiguous.  There was no procedural error.

-41-

III. **THE SENTENCE WAS SUBSTANTIVELY REASONABLE**.

### Standard of Review

        Whether the district court's sentence was substantively reasonable is reviewed for abuse of discretion.  See Gall v. United States, 552 U.S. 38, 46 (2007).

### Discussion

        Eyster contends his sentence is substantially unreasonable because it is longer than necessary to achieve the sentencing goals of protecting the community and just punishment.  Br. at 19-20.  Eyster's contention is based upon pure speculation, and disregards the extensive factual findings establishing that the sentence is reasonable.

        In reviewing the substantive reasonableness of the district court's sentence, this Court applies a highly deferential standard and must affirm the sentence if it falls within a broad range of possible sentences that can be considered reasonable in light of the 3553(a) factors.

        The Supreme Court has made clear that an appellate court's review of a sentence is deferential, under an abuse

-42-

of discretion standard.  Under Gall, an appellate court
must:

> first ensure that the district court committed no
> significant procedural error, such as failing to
> calculate (or improperly calculating) the Guidelines
> range, treating the Guidelines as mandatory, failing to
> consider the § 3553(a) factors, selecting a sentence
> based on clearly erroneous facts, or failing to
> adequately explain the chosen sentence - including an
> explanation for any deviation from the Guidelines
> range.

Gall, 552 U.S. at 51.  After ensuring that the "district

court's sentencing decision is procedurally sound, the

appellate court should then consider the substantive

reasonableness of the sentence imposed under an

abuse-of-discretion standard."  Id.  The Supreme Court has

recognized that the mere "fact that the appellate court

might reasonably have concluded that a different sentence

was appropriate is insufficient to justify reversal of the

district court."  Gall, 552 U.S. at 50.

Further, an appellate court may presume that a

within-guideline sentence is reasonable.  Rita v. United

States, 551 U.S. 338 (2007).  See also Gall, 552 U.S. at 49

(describing the guidelines as the "initial benchmark").

While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a),

the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," Kimbrough v. United States, 552 U.S. 85, 90-91 (2007), it remains the case that "the Commission fills an important institutional role:  It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" id. at 108-109, quoting United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring).

Thus, the Supreme Court stated:  "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'"  Kimbrough, 552 U.S. at 109, quoting Rita v. United States, 551 U.S. 338, 350 (2007).  The Supreme Court held in Rita that a sentence imposed within the advisory guideline range may be afforded a presumption of reasonableness on appeal.  The Court explained that the Sentencing Commission is an expert body, and that when its recommendation as to similar cases in

-44-

general matches the assessment of the sentencing court with
regard to a defendant's case in particular, an appellate
court may presume that the sentence is reasonable.  The
Supreme Court declared that "the presumption reflects the
fact that, by the time an appeals court is considering a
within-Guidelines sentence on review, both the sentencing
judge and the Sentencing Commission will have reached the
same conclusion as to the proper sentence in the particular
case.  That double determination significantly increases the
likelihood that the sentence is a reasonable one."  Id. at
347 (emphasis in original).

        In Gall, while repeating the availability of this
presumption, the Court further emphasized a district court's
ultimate sentencing discretion, resting on the trial court's
superior expertise in sentencing matters.  Gall, 552 U.S. at
49-50.  Applying the necessary deferential standard of
review on appeal, the Supreme Court in Gall held that an
appellate court erred in reversing a sentence as
unreasonable, even though that sentence represented a
substantial variance from the applicable guideline range.
(Faced with a guideline range of 30-37 months, the district

-45-

court in Gall imposed a probationary sentence, on the basis
of the defendant's significant rehabilitation, and other
factors.)  If the sentence in Gall, involving a significant
variance, was affirmed based on the discretionary standard
of review, then certainly the within-range sentence in this
case must be affirmed.  As Judge Easterbrook wrote, "After
Gall v. United States, 128 S.Ct. 586 (2007), stressed the
extent of a district judge's discretion in sentencing, and
the limits of appellate review, it is difficult to see how a
mid-Guideline sentence could be upset unless the judge
refuses to entertain the defendant's arguments or resorts to
an irrational extra-statutory consideration."  United States
v. Shrake, 515 F.3d 743, 747 (7th Cir. 2008).

       In this case, the district court fully considered
the sentencing factors of Section 3553(a) and its findings
provide logical support for the sentence.  Eyster has failed
to show that the within-guidelines sentence is in any way
unreasonable.

       The district court found that Eyster was "an
absolute threat" to the community, particularly children, a
finding amply supported by the evidence.  Eyster began

molesting children when he was a teenager.  Eyster was
court-martialled, dishonorably discharged from the Navy, and
sentenced to eight years in prison for raping a child.
Incredibly, Eyster resumed his molestation of children soon
after his release from prison.  The district court described
Eyster as unrepentant and unremorseful, finding that Eyster
was:

> manipulative and willing to go to great lengths to
> cultivate relationships with children and their
> parents, including attending church, traveling to other
> states, befriending the parents, moving into their
> homes and paying rent, all for the purpose of sexually
> abusing minor children.

App. 202.  With respect to the Kentucky victims, Eyster
sexually abused an entire family of children, repeatedly and
over an extended period of time.  His protracted sexual
abuse of these victims was horrific.  No doubt, Eyster's
sexual molestation of these children would have continued
but for the intervention of law enforcement authorities.

Not surprisingly, the Sentencing Guidelines
provided for a sentence as long as life imprisonment, while
the statutes of conviction capped the sentence at 840
months.  The government requested a sentence within the

-47-

Sentencing Guidelines range that would prevent Eyster from
molesting another child, and quite appropriately, the
district court imposed a sentence within the Sentencing
Guidelines range that assures Eyster will never molest
another child, either by physical contact or by downloading
child pornography from the Internet.

The district court's finding that imposition of
the statutory maximum sentence was required to protect the
community and its children, standing alone, is sufficient
justification for the sentence.  However, the district court
also found that the maximum statutory sentence was necessary
to impose a just punishment.  The district court reasoned
that because Eyster had destroyed the lives of so many
innocent children, justice required that he spend the rest
of his life in prison.  Again, this finding, standing alone,
is sufficient to establish that the sentence is
substantively reasonable.  Each of the district court's
additional findings under 18 U.S.C. § 3553(a) provide
additional logical support that the sentence was necessary
to implement the goals of Section 3553(a), particularly the
district court's finding that the sentence will deter others

-48-

from acting on their deviant impulses, to the detriment of innocent children.

Eyster bears the burden of proving the district court's sentence was unreasonable.  See United States v. Lessner, 498 F.3d 185, 203-04 (3d Cir. 2007).  Eyster has failed to do so.  Eyster's contention that the goals of protecting the community and just punishment could be satisfied by a significantly lower sentence is based on pure conjecture that Eyster may some day no longer pose a threat to children.  Br. 20-21.  The evidence presented at the sentencing hearing and the district court's factual findings rebut such speculation.  Certainly, Eyster's optimism about his possible rehabilitation does not permit this Court to find that the district court abused its discretion in fashioning a within-guideline sentence that protects the community, metes out a just punishment, and deters similar horrendous conduct by others.

Eyster notes he was not accused of distributing child pornography and apparently believes this mitigating factor justifies a shorter sentence.  Br. 20.  Although the absence of distribution activity may temper the harm of an

-49-

offense of possession of child pornography, any inference of redemption that may be drawn from this fact is quashed by Eyster's actual abuse of the Kentucky victims and other children.

Eyster's further speculation that he would be subject to involuntary commitment under the Adam Walsh Act if he continued to pose a danger to the community upon his sentence, is patently absurd. Potential involuntary commitment hardly renders a sentence of imprisonment unreasonable.

In sum, the district court imposed a sentence within the Sentencing Guidelines range after thorough consideration of the sentencing factors of Section 3553(a). The district court's sentence is supported by record findings. Arguably, on the facts of this egregious case, imposition of anything less than lifetime incapacitation is unimaginable. At the very least, Eyster has failed to demonstrate that the district court's sentence is in any way unreasonable. The Court should affirm the sentence.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the judgment of the district court be affirmed.

Respectfully submitted,

MICHAEL L. LEVY
United States Attorney


/s Robert A. Zauzmer
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals
Pa. Bar No. 58126


/s Frank A. Labor III
FRANK A. LABOR III
Assistant United States Attorney
Pa. Bar No. 41147


United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
(215) 861-8675

## CERTIFICATION

1.  The undersigned certifies that this brief contains 8,426 words, exclusive of the table of contents, table of authorities, and certifications, and therefore complies with the limitation on length of a brief stated in Federal Rule of Appellate Procedure 32(a)(7)(B).

2.  I hereby certify that the electronic version of this brief filed with the Court was automatically scanned by ScanMail Real-Time Scan Monitor, version 3.82, by Trendmirco, and found to contain no known viruses.  I further certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court.

/s Frank A. Labor III
FRANK A. LABOR III
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this brief has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Brett G. Sweitzer, Esq.
Federal Community Defender Office
Suite 540 West - Curtis Center
601 Market Street
Philadelphia, PA  19106


/s Frank A. Labor III
FRANK A. LABOR III
Assistant United States Attorney


DATED:  March 8, 2010.